IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HENRY BARKSDALE                              *
               Plaintiff,
     v.                                        *        CIVIL ACTION NO. DKC-15-1109

WARDEN KATHLEEN GREEN                    *
DEPARTMENT OF PUBLIC SAFETY &
  CORR. SERVICES                             *
             Defendants.

*****

## MEMORANDUM OPINION

Eastern Correctional Institution ("ECI") inmate Henry Barksdale ("Barksdale), who is representing himself,[1] filed an original and amended 42 U.S.C. § 1983 complaint for injunctive relief which relates to his confinement at ECI.  ECF Nos. 1 & 9.  In his original complaint, received for filing on April 16, 2015, Barksdale provided a laundry list of issues associated with the conditions at ECI.[2]  ECF No. 1.

Barksdale's amended complaint for injunctive relief expounds on his allegations of unconstitutional conditions as to the receipt of mattresses and pillows, the unavailability of porta-potties or water coolers in the exercise yard or gymnasium, and the distribution of "adequate"

---

[1]    Barksdale's attempt to file the complaint on behalf of himself and other ECI inmates was rejected.  Class certification was denied on May 22, 2015.  ECF No. 8.

[2]    Barksdale complains that Defendants are forcing inmates to purchase over-the-counter medicine from a private corporation, denying inmates the ability to use the bathroom during the library period, refusing to place "pot-o-potties" in the recreation yard during recreation periods, denying inmates the receipt of mattresses and pillows manufactured in the Maryland Correctional Enterprise mattress plant, denying inmates a "living wage" from the vocational, education, hospital, and ground maintenance departments, denying inmates adequate dietary food and exercise equipment, denying inmates the required amount of time in the exercise yard and gym, denying inmates water coolers and drinking cups in the recreation yard or gym, denying inmates' families the opportunity to take photographs during visiting hours and family day events, denying inmates the proper use of shelf lockers, and denying inmates the opportunity to make adequate purchases of hygiene items and legal materials from a private corporation.  ECF No. 1, pp. 2-3.

food,[3] the adequacy of medical care, and the issuance every six months of clothing and boots. ECF No. 4.

Defendants, by their counsel, have filed a motion to dismiss or, in the alternative, motion for summary judgment, accompanied by declarations and exhibits.  ECF No. 18.  No opposition has been filed to the motion to dismiss or for summary judgment, and the time to do so has expired.[4]  Oral hearing is not needed to resolve the issues.  *See* Local Rule 106.5 (D. Md. 2016). For the reasons to follow, Defendants' motion, construed as a motion for summary judgment IS GRANTED and judgment will be entered in their favor.

## STANDARD OF REVIEW

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  ECF No. 12.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must

---

[3]    Barksdale complains that outdated and saccharine-laced food is served to inmates.  ECF No. 4, p. 3.

[4]    Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on October 27, 2015, Barksdale was notified that Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his case.  ECF No. 19.  He was informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court.  *Id.*

be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that  conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49.  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).  Particularly, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011)).  "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D.

Md. 2011) (alteration in original) (citation omitted).  A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit … is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Harrods,* 302 F.3d at 244 (citations omitted).  But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Id.* (internal citations omitted).  According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted).

Barksdale has not filed an affidavit under Rule 56(d).  In light of the foregoing, I am satisfied that it is appropriate to address the Defendants' Motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

Barksdale, who seeks injunctive relief to ameliorate what he perceives to be unconstitutional conditions of confinement, must demonstrate: (1) by a "clear showing" that he is

"likely to succeed on the merits" at trial, (2) he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest," as is required for injunctive relief.  *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-24 (2008); *see Dewhurst v. Century Aluminum Co.,* 649 F.3d 287, 290 (4th Cir. 2011).   The moving party must satisfy each of these requirements as articulated.  *Real Truth About Obama, Inc. v. Federal Election Com'n,* 575 F. 3d 342, 347 (4th Cir. 2009), vacated on other grounds, 555 U.S.1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th  Cir. 2010) (per curiam).

## DISCUSSION

Defendants claim that Barksdale was transferred to ECI from the Western Correctional Institution in November of 2012.  ECF No. 18-4.[5]  In addressing Barksdale's claims, Defendants make the following general observations.  Division of Correction Directive ("DCD") 175.0004 establishes guidelines and provides an approved list of over-the-counter ("OTC") medications for all Division of Correction ("DOC") facilities.  There are currently 36 items on the list as the only commissary items approved for medical use.  ECF No. 18-6.

Defendants further maintain that DCD 245-5 governs inmate wage scales for different job assignments.  This DCD indicates that inmate assignments do not normally extend beyond eight hours a days and forty hours per week; each assignment is classified into one of five pay categories:  skilled, student, semi-skilled, craftsman, or job bank/unpaid; inmate pay scales are created for each level of skill and inmates, when assigned, are paid at the base wage for the assigned skill level; requests for inmate pay raises are accepted every year in June, and if

---

[5]   All citations to electronic exhibits and declarations are referenced by their designation on the automated docket.

approved, become effective July 1; pay raises are contingent upon the availability of appropriate funding; and if funding is unavailable, requests for pay raises are postponed and considered the following year.  ECF No. 18-7.

Defendants assert that ECI Institutional Directive 145.001.1 sets out an organized recreation and leisure time program for ECI inmates.  ECF No. 18-8.  They state that ECI policies attempt to ensure that all inmates have access to recreational programs, including leisure-time and outdoor activities, and to ensure that exercise areas are available in proportion to the inmate population and are maintained in good condition.  The correctional officer in charge of ECI recreation submits an annual plan for replacement and renewal of equipment and an annual report including accomplishments and plans and goals for the following year.  ECF No. 18-8.  Activities and equipment at ECI include a recreation yard, which includes basketball courts, softball/baseball/football/soccer fields, a volleyball court, a weightlifting area, and horseshoes.  In addition, ECI maintains a gymnasium that includes weightlifting, basketball, volleyball, handball, and pool and ping pong tables.  *Id.*  In 2015 "Evening Recreation" was created to ensure that adequate daylight was available to provide inmates the required recreation time.  ECF No. 18-9.

ECI Dietary Manager James White affirms by declaration that Barksdale "has not been on any special diets since being house here at ECI."  ECF No. 18-10.  White further maintains that there are no records supporting a finding that expired food products are being served at ECI nor any complaints in reference to "saccharine-laced" foods.  *Id.*

Defendants provide DCD 175-1 and ECI Institutional Directive 175.0001.1, reflecting the policies and regulations governing the Inmate Welfare Fund and Use of Commissary.  ECF No.

18-11 & ECF No. 18-12.   In addition, they include a copy of the ECI Inmate Orientation Handbook, which discusses a variety of topics, including commissary, diets, recreation, programs and services, and the Maryland Correctional Enterprises ("MCE").   ECF No. 18-13.

According to the ECI banking system records, as of October 14, 2015, Barksdale had a balance of $590.24 in his prison account and his account has consistently included payroll and commissary transactions.   ECF No. 18-14; ECF No. 18-15; & ECF No. 18-16.   The ECI Litigation Coordinator affirms that Barksdale maintains his employment status with the MCE and has not qualified as an indigent inmate eligible for welfare commissary.   ECF No. 18-21.

Policies governing inmate personal property are set out in directives and guidelines provided by Defendants.   They state that it is ECI's policy to allow inmates to retain a reasonable amount of personal clothing and valuables that do not pose a threat to the order and security of the institution and to ensure that space is provided for storing inmate personal property safely and securely.   ECF No. 18-10; ECF No. 18-17; & ECF No. 18-18.

Defendants provide the Institutional Directive governing Inmate Family Days.   ECF No. 18-19.   Although the Directive does not mention the prohibition against camera usage during Family Days as complained of by Barksdale, Defendants note that cameras are banned in the institution and the taking of photographs by visitors is not permitted.   ECF No. 18-21, Switalski Decl.

Defendants observe that in December of 2012, Barksdale was placed on segregation and went on a hunger strike, resulting in his missing seven meals as reported to medical staff.   ECF No. 18-20, filed separately exhibit, pp. 89-91.   Barksdale had a partial thyroidectomy ten years earlier and was placed on calcium.   *Id*., p. 86.   He refused to take his blood pressure medication

throughout 2013, due to side effects and was twice referred for a mental health evaluation due to his non-compliance with his medication regimen.[6] He was found competent to make medical decisions.  ECF No. 18-20, filed separately exhibit, pp. 47-86 & 109-116.  On August 7, 2013, Barksdale was seen in the medical department for knee pain, claiming that he injured his knee in December of 2013, while jogging in the prison yard.  *Id.*, pp. 56-57.  On January 30, 2014, a cardiovascular diet was ordered for Barksdale.   He continued to refuse blood pressure medication, an eye examination, and an EKG.  *Id.*, pp. 37-46 & 105-108.  Defendants state that Barksdale again was seen for knee pain in June of 2014 and was advised to stop running to decrease the knee pain.  He indicated he intended to keep running.  *Id*, pp. 33-36, 100-101, & 104.  As of July, 2014, Barksdale remained non-compliant with his hypertension medication and failed to follow the cardiovascular diet ordered for him.  *Id.*, pp. 23-32 & 102-103.

On November 5, 2014, Dr. Oteyza observed that Barksdale had been taking Lisinopril and Clonidine for the past two months for his hypertension.  Amlodipine and HCTZ were added, although Barksdale's prior non-compliance with the medication was noted.[7]  He was to be seen for a follow-up appointment in three weeks.  At that time, Barksdale reported that he had been 90% compliant with his medication regimen.  *Id.*, pp. 20-22.  As of February 18, 2015, Barksdale reported that he continued to take his Lisinopril and Clonidine for his hypertension, but stopped taking the HCTZ because it was causing him headaches and palpations.  *Id.*, p. 15.  In May of

---

[6]    Defendants provide Barksdale's lab reports and medication sheets from 2013, 2014, & 2015. Paper No. 18-20, Filed Separately Exhibits, pp. 130-221.

[7]    The medications Lisinopril, Clonidine, Amlodipine, and HCTZ are used to treat high blood pressure          (hypertension).          *See*          https://www.drugs.com/lisinopril.html, https://www.drugs.com/clonidine.html,          https://www.drugs.com/amlodipine.html,          and https://www.drugs.com/amlodipine.html.

2015, x-rays of the knee were conducted.  They showed no joint effusion, no acute fracture,

dislocation, or subluxation, and preserved joint spaces and alignment.  Barksdale was diagnosed

with arthritis of the knee.  Glucosamine was prescribed.  Paper No. 18-20, filed separately

exhibit, pp. 7-8, 14-17, & 28.

Defendants provide the January 26, 2015 and February 23, 2015 correspondence written

by Congressman Elijah Cummings and responded to by Dayena Corcoran, the Acting Assistant

Commissioner, East, in response to Barksdale's claims regarding conditions at ECI.  ECF No.

18-24.

Administrative Remedy Procedure ("ARP") Coordinator Greg Ward affirms that

Barksdale filed an ARP in February of 2013 regarding a discrepancy in his inmate account

balance and as of October 15, 2015, this was the only ARP filed by Barksdale.  ECF No. 18-25,

Ward Decl. & ECF No. 18-26.  Further, former Inmate Grievance Office ("IGO") Executive

Director Scott Oakley maintains that as of August 12, 2015, Barksdale has not filed any

grievance with the IGO since November 30, 2012.  ECF No. 18-27, Oakley Decl.

## ANALYSIS

The complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of

substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"

*Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3

(1979)).  A suit under § 1983 allows "a party who has been deprived of a federal right under the

color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526

U.S. 687, 707 (1999).  To state a claim under § 1983, a plaintiff must allege that:  (1) a right

secured by the Constitution or laws of the United States was violated, and (2) that the alleged

violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants assert that Barksdale's claims are subject to dismissal under Rule 12(b)(6) and/or subject to adverse judgment under Rule 56 on the chief grounds of respondeat superior, failure to exhaust administrative remedies, and the failure to demonstrate a violation of his First, Fourteenth and Eighth Amendments rights.  The court shall address Defendants' affirmative defenses before examining Barksdale's multiple First, Eighth, and Fourteenth Amendment allegations.

### A. Administrative Exhaustion

Defendants argue that Barksdale's claims must be dismissed because he has failed to exhaust available administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e(a).  Exhaustion of administrative remedies is an affirmative defense, which is most properly considered on a motion for summary judgment.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release,

or diversionary program." 42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Thus, the exhaustion provision plainly extends to Barksdale's allegations. Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.   Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See Jones v. Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes.  These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  *Jones*, 549 U.S. at 219; *see Moore*, 517 F. 3d at 725 (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies).  It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.   *Chase v. Peay*, 286 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied

relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette,* 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch,* 50 F.Supp.2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). But, this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, ____ U.S. ____, 136 S. Ct. 1850 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855.

In *Ross*, the Supreme Court stated that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'"[8] *Id.* at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). An administrative remedy is not available "if a

---

[8]    The Supreme Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." These circumstances arise when: the remedy operates as a "simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" the administrative scheme might be so "opaque" as to become "practically speaking, incapable of use;" and prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60.

prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725. Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *Chase v. Peay*, 286 F. Supp. 2d at 529-30 (requiring that Maryland prisoners appeal up to the IGO).

The Maryland Department of Public Safety and Correctional Services has made an "administrative remedy procedure" available to Maryland State prisoners, within the meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against…official[s] or employee[s] of the Division of Correction." Md. Code, Correctional Services Article ("C.S.") § 10-206(a); *see generally* C.S. §§ 10-201 *et seq.*; Code of Maryland Regulations ("COMAR") 12.07.01.01(B)(1) (defining ARP). Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC]…against any officials or employees of the [DOC]…arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8). An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; DCD 185-002 (effective August 27, 2008). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the ARP process. *See* COMAR 12.07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an

appeal with the Commissioner of Correction.  COMAR 12.07.01.05C.  If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office.  *See* C.S. §§ 10-206, 10-210; COMAR 12 07.01.03; COMAR 12.07.01.05B.  *See also Division of Correction Directive* 185-002, § VI.NI.

Complaints are reviewed preliminarily by the IGO.  *See* C.S. § 10-207; COMAR 12.07.01.06A.  If the complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.  The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.J. § 10-208(c); COMAR 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  C.S. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)-(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies.  *See* C.S. § 10-210.  But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement.  *See*, *e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A] prisoner who

15

uses all administrative options that the state offers need not also pursue judicial review in state court."), *cert. denied*, 537 U.S. 949 (2002).

Barksdale fails to refute the uncontroverted declarations which show that he never filed an ARP or grievance with the IGO concerning the issues raised in this complaint.  As such, the allegations raised in this complaint may not proceed, as Barksdale has plainly failed to exhaust administrative remedies as to those issues.  Even if Barksdale had properly exhausted his administrative remedies, however, summary judgment in favor of the State Defendants would be appropriate because the papers, declarations, and exhibits on file demonstrate that they did not violate his constitutional rights.

Even were this court to examine the merits of the claims against the named defendants, however, it would find for reasons to follow that Barksdale has failed to articulate a colorable constitutional claim against them.[9]

---

[9]   Barksdale names ECI Warden Green as a Defendant, but at no point discusses precisely how she was personally involved in the alleged deprivations.  Under § 1983, individual liability must be based on personal conduct.  *See Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985); *see also Foote v. Spiegal,* 118 F.3d 1416, 1423 (10th Cir. 1997).  Further, absent subjective knowledge, a prison official is not liable.  *Farmer v. Brennan,* 511 U.S. 825, 847 (1994); *see Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998).

Under *Shaw v. Stroud,* 13 F.3d 791 (4th Cir. 1994), supervisory liability may attach to a prison administrator under § 1983 if a plaintiff can establish three elements.  These are:  (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) "that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."  *Id.* at 799 (citations omitted).  Under the first prong of *Shaw,* the conduct engaged in by the supervisor's subordinates must be "pervasive," meaning that the "conduct is widespread, or at least has been used on several different occasions."  *Id.*  Barksdale has not made such a showing with regard to Warden Green.

### B.  Medical Claims

Barksdale complains about ECI inmates having to purchase of over-the-counter medication from a private corporation (Keefe Group) and generally alleges that ECI inmates receive inadequate medical care.  The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lanta v. Angeline*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seater*, 501 U.S. 294, 297 (1991).  In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to his serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious.[10]  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).  Proof of an objectively serious medical condition, however, does not end the inquiry.

---

[10]     A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Iko*, 535 F.3d at 241, citing to *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicted…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown*, 240 F. 3d at 390; citing *Liege v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LaFevers*, 423 F.Supp.2d 1064, 1070-71 (C.D. Cal. 2006).

Barksdale's medical claims against Defendants are subject to dismissal. The undisputed record shows that they did not interfere with or have any involvement in his medical care.[11] *See*

---

[11]    Defendant Department of Public Safety and Correctional Services ("DPSCS") is a state agency. *See* Md. Code. Ann., Corr. Servs., Art., §§ 1-101(f). Neither a state nor an agency of a state is a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990).   Further, the record establishes that he was seen by nurses, physician's assistants and physicians; received blood tests and x-rays for his various complaints and to monitor his condition; and was prescribed medication for his hypertension and cardiovascular conditions. His non-compliance with the prescribed medication regimen and diet is well documented.

Further, as noted by Defendants, the DPSCS has an approved non-prescription OTC list of medications available for purchase in the commissary thorough the Keefe Group and approved by the private health care contractor.   All non-indigent inmates are required to submit a co-payment of $2.00 for each sick-call visit.   Barksdale, who is not indigent, has failed to state exactly how this policy has caused him injury or otherwise rendered him unable to receive OTC medication.[12]

### D.  Conditions of Confinement

Barksdale raises a litigany of Eighth Amendment claims regarding the conditions at ECI. (*see* p. 1 at n. 2 infra).   To establish a claim for cruel and unusual punishment due to conditions of confinement**,** a plaintiff must allege facts sufficient to show (1) an objectively serious

---

& 70-71 (1989).   Moreover, state agencies are immune from liability under the Eleventh Amendment from a § 1983 suit in federal court without regard to the nature of the relief sought.   *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-01 (1984); *C.H. v. Oliva*, 226 F.3d 198, 201 (3rd Cir. 2000).   The complaint against DPSCS is subject to dismissal for want of jurisdiction.

[12]   The court further notes that inmates are not entitled to free medical care, and any challenge to the medical co-pay policy fails.   *See Rinehart v. Beck*, No. 5:09–CT–3019–D, 2011 WL 52360, at *4 (E.D. N.C. Jan. 5, 2011) (unpublished) (collecting cases), *aff'd,* 441 F. App'x 148 (4th Cir. 2011) (per curiam) (unpublished); *Gonzalez–Revna v. Ellis,* No. 1:09CV522 AJT/TCB, 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009) ("Inmates are not entitled to free medical care, and an inmate's displeasure at having to pay such co-payment does not present a constitutional claim."); *Johnson v. Dep't of Pub. Safety & Corn Servs.,* 885 F.Supp. 817, 820 (D. Md. 1995) ("co-pay requirements for prison medical services are constitutional").

deprivation of a basic human need causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Wilson v. Seiter,* 501 U.S. 294, 198 (1991). To meet the first prong, a plaintiff must allege facts sufficient to show that the condition complained of caused a "sufficiently serious" deprivation of a basic human need. *Farmer,* 511 U.S. at 834. Only extreme deprivations will make out an Eighth Amendment claim, and plaintiff has the burden of alleging facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in significant physical or emotional injury. *See Hudson v. McMillian,* 503 U.S. 1, 8 (1992); *Strickler v. Waters,* 989 F.2d 1375, 1379–81 (4th Cir. 1993). A plaintiff cannot have been subject to unconstitutional confinement conditions unless he can show a serious or significant physical or mental injury as a result of those conditions**.** *Strickler,* 989 F.2d at 1380–81 (finding that the inmate's legal complaint about overcrowding and poor ventilation did not constitute a constitutional violation because inmate did not allege that he suffered from any specific injury as a result of those purported conditions).

To meet the second prong, a plaintiff must allege facts sufficient to show that the defendant knew of circumstances from which an inference could be drawn that a "substantial risk of serious harm" was posed to plaintiff's health and safety, that he drew that inference, and disregarded the risk posed. *Farmer,* 511 U.S. at 837. Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *Strickler*, 989 F. 2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993)

(exposure to environmental tobacco smoke).  The key in determining whether prison conditions become cruel and unusual requires examination of the effect on the inmate.  *See Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).  It is of note that the aforementioned burdens of proof remain the standard of review in the Supreme Court and this circuit.

The "minimal civilized measure of life's necessities" includes adequate shelter, food, clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).  The time period during which an inmate is deprived of a basic necessity is important in determining whether the deprivation was unconstitutional.  *See Chappell v. Mandeville,* 706 F.3d 1052, 1060 (9th Cir.  2013) (citing *Hutto v. Finney,* 437 U.S. 678, 686–687 (1978) for the proposition that "a condition of confinement which does not violate the Eighth Amendment when it exists for just a few days may constitute a violation when it exists for 'weeks or months' "); *Hearns v. Terhune,* 413 F.3d 1036, 1043 (9th Cir. 2005); *see also Hope v. Pelzer,* 536 U.S. 730 (2002) (Eighth and Fourteenth Amendment violations when inmate was handcuffed to a hitching post for several hours without bathroom breaks); *Fountain v. Talley*, 104 F. Supp.2d 1345 (M.D. Ala.  2000) (Eighth Amendment claim stated as to inmate chained to hitching post for significant time after use of laxative without access to bathroom facilities).  However, "the more basic the need, the shorter the time it can be withheld."  *Johnson,* 217 F.3d at 731(citations omitted); "Minor deprivations suffered for short periods of time will not rise to the level of an Eighth Amendment violation, but 'substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite their even shorter duration.'"  *Jacobs v. Quinones,* No. 1:10–cv–02349 WL 144234, at *7 (E.D. Cal. Jan. 11, 2013) (citing *Johnson,* 217 F.3d at 729–730).

The court has examined the unopposed record exhibits provided by Defendants and finds that Barksdale has failed to demonstrate that the conditions to which he was exposed constitute punishment and that he experienced injury directly related to those conditions.

### E.  Prison Job Assignments

While prison employment may serve an important rehabilitative function, the law is well settled that a prisoner has no constitutional right to participate in an educational or rehabilitative program.  *See Moody v. Daggett*, 429 U.S. 78, 88 at n. 9 (1976) (due process clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where prisoner suffers "grievous loss"); *Bulger v. United States Bureau of Prisons,* 65 F.3d 48, 49 (5th Cir. 1995) ("Prisoner classification and eligibility for rehabilitation programs...are not directly subject to 'due process' protections") (citing *Moody, supra.*).  Barksdale was afforded a job in the MCE and has been receiving wages.  He has no constitutionally protected liberty interest in receiving a "living wage" for work performed.  *See Washlefske v. Winston,* 234 F.3d 179, 184 (4th Cir. 2000) (finding that a prisoner has no property interest in wages earned); *Borror v. White,* 377 F.Supp. 181, 183 (W.D. Va. 1974) ("[T]here exists no [federal] constitutional right on the part of a state prisoner to be paid for his labor.").[13]

### Access to Courts

Barksdale makes an ambiguous reference to his inability to purchase the appropriate amount of legal materials and claims he has "suffered loss of adequate access to meet court deadlines because of the restrictions to purchase legal materials in order to comply with court procedures."  Inmates are entitled to "a reasonably adequate opportunity to present claimed

---

[13]    To the extent that Barksdale generally complains that Defendants have violated prison directives with regard to medical care and the "living wage," he has failed to set out a constitutional violation.  *See Ricco v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990)(violations of a procedure not required by the Constitution does not state a due process claim); *Keeler v. Pea*, 782 F. Supp. 42, 44 (D. S.C. 1992) (§ 1983 protects against constitutional violations not violations of prison rules).

violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *see also Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978).  In 1996, the Supreme Court clarified the *Bounds* decision by finding that a deprivation of a prisoner's right of access to the courts is actionable, but only when the prisoner is able to demonstrate actual injury from such deprivation.  *See Lewis v. Casey*, 518 U.S. 343, 349 (1996).  According to the *Lewis* opinion, the Constitution does not guarantee inmates the ability to litigate every imaginable claim they can perceive, only that they be given the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 355.

Barksdale's access-to-courts claim is vague and generalized.  He provides no supporting materials to show how the alleged restrictions on his ability to purchase "legal materials" rendered him unable to pursue legal matters in court or otherwise caused him real injury.  This claim shall be dismissed.

## CONCLUSION

Having found no genuine dispute of material fact justifying a trial on the merits in this case, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, construed as a motion for summary judgment, shall be granted.  A separate Order shall be entered forthwith.

Date:  August 1, 2016

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge